FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Feb 08 2022

KEVIN P. WEIMER, Clerk

By: s/Kari Butler
Deputy Clerk

4:22

# United States District Court
NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Martin Goicochea Jr.

**CRIMINAL COMPLAINT**

Case Number: 4:22-MJ-10

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about February 2, 2022 in Floyd County, in the Northern District of Georgia, defendant(s) did, conspire to possess with the intent to distribute a Schedule II controlled substance, and possess with the intent to distribute a Schedule II controlled substance;

in violation of Title 21, United States Code, Section(s) 841(b)1(a) and 846.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

Signature of Complainant
James Williams

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

February 8, 2022                                             at   Rome, Georgia
Date                                                                    City and State

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                          Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, James C. Williams, being duly sworn, hereby depose and state as follows:

1. I have been a Special Agent with the DEA since April 2009. I am currently assigned to the Atlanta Division, Rome Post of Duty (POD). Prior to my employment as a Special Agent with the DEA, I was employed by the U.S. Secret Service as a Special Agent for approximately two years and before that as a DEA Diversion Investigator for approximately two years.

2. Upon joining the DEA, I received 4 months of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia.

3. During my assignment with the DEA, I have participated in numerous search and seizure warrants pertaining to the seizure of contraband and evidence, including warrants resulting in the seizure of illegal drugs, drug paraphernalia, drug records, and proceeds of drug trafficking. I have debriefed numerous defendants, informants, and witnesses, who possessed personal knowledge regarding drug trafficking organizations. I also have become familiar with and utilized investigative techniques such as, without limitation, electronic and physical surveillance, general questioning of witnesses, use of search warrants, use of informants, use of grand jury subpoenas, use of pen registers, and use of undercover agents.

4. Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have conducted with defendants,

informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business. My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions. I also am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of carriers to transport currency and proceeds, the use of third parties to purchase or hold title to assets, and the use of off-shore accounts.

5. I also know from my training and experience that individuals smuggle and/or transport illegal controlled substances using vehicles. These individuals evade law enforcement by conducting counter-surveillance maneuvers known as surveillance detection runs, or more commonly known as "heat runs." These maneuvers commonly consist of constant route changes, lane changes, U-turns, and making frequent stops at commercial retail stores among other maneuvers designed to make mobile vehicle surveillance more difficult and dangerous to law enforcement personnel. Often, drug traffickers will reside in one location and store, or "stash," drug supplies in another. While traveling to stash locations, traffickers will often use privately owned vehicles. While traveling to and from stash locations, traffickers will often conduct the maneuvers described above and will take illogical routes from one location to another in an attempt to evade or confuse law enforcement surveillance efforts. In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career

has been further informed by other law enforcement agents with experience conducting drug investigations.

## Sources of Information

6. The facts and information in this affidavit are based in part on information provided to me by other law enforcement officers, as well as my personal experience with the case and my background as a DEA Special Agent. Since this affidavit is being submitted for an arrest warrant, I have not included every fact known to me concerning this investigation. Rather, I have set forth only those facts necessary to support the issuance of an arrest warrant.

7. I make this affidavit in support of an application for the issuance of a criminal complaint and arrest warrant for Martin GOICOCHEA Jr. for violations of Title 21, United States Code, Section 841(a)(1) and Title 18.

## Probable Cause

8. On February 2, 2022, I was advised of an Emergency Medical Services call for the report of an overdose at 1347 Prior Station Road, Cedartown, Georgia received by an operator of the Polk County, Georgia 911 center. I knew from prior investigations this to be the residence of Martin GOICOCHEA Jr. The 911 caller provided the name of "Martin Chance" which your Affiant knows to be an alias for Martin GOICOCHEA Jr. Through prior investigations, I know that Martin GOICOCHEA Jr. was a heroin and methamphetamine dealer in North Georgia and Alabama. Upon responding to the residence, Investigator Tracy Royston of the Polk County Drug Task Force reported smelling a heavy chemical smell inside the outbuilding where the overdose victim was found and attended to by police and EMS. Investigator Royston observed Martin GOICOCHEA run back into the

back door of his residence and she went to the door in order to speak with Martin GOICOCHEA. When he returned to the door Investigator Royston reported she could smell marijuana resonating from inside the residence. Investigator Royston also advised that an officer on the scene had heard Martin GOICOCHEA tell another person inside the house to, "get rid of the marijuana," or words to that effect.

9. Based on the circumstances surrounding the overdose inside the single wide trailer located on the property and the scent of marijuana coming from the residence, agents of the Polk County Drug Task Force secured the residence. DEA Task Force Officer Wayne Lloyd applied for and was granted a Georgia State Search Warrant for the residence and property signed by Georgia Superior Court Judge Ming Lim.

10. During the subsequent search of the property, agents discovered approximately 119 blocks (100 gram packages) of compressed material that field tested positive for the presence of methamphetamine. The packages were discovered strewn atop the tiles of a drop ceiling. Additionally, but without full inclusivity, agents located bags containing approximately 261 grams of suspected ice methamphetamine, 182 grams of a substance that field tested positive for the presence of cocaine and a small amount of suspected heroin, marijuana and psilocybin mushrooms. Upon a further search of the property, agents discovered an operating clandestine methamphetamine extraction laboratory that yielded the seizure of 3 gallons of acetone, 805 grams of a wet crystal substance that field tested positive for the presence methamphetamine, as well as methamphetamine manufacturing equipment. Moreover, a search of the trash located on the property resulted in the discovery of 290 empty packages that were similar in shape, size, color and fashion to those that were discovered atop the drop ceiling inside the

residence. Some of the packaging material held residue that was consistent with methamphetamine seized from the drop ceiling.

11. The total aggregate weight of methamphetamine seized on the property was approximately 13 kilograms, an amount greater than 500 grams. Martin GOICOCHEA Jr. was arrested on State of Georgia methamphetamine trafficking and other Georgia State drug related charges and held at the Polk County, Georgia jail. GOICOCHEA Jr. made no statements regarding the incident and invoked his right to an attorney.

12. Agents also conducted an interview of the girlfriend, Amber Spann, who stated only herself and GOICOCHEA Jr. reside at the location. Ms. Spann denied ownership of the drugs found and stated they were indeed GOICOCHEA Jr.'s.

13. Prior to the search of GOICOCHEA Jr.s' property, agents traveled to Redmond hospital in Rome Georgia where the overdose victim, Christopher Brian STEED had been taken by ambulance and was conscious. Agents conducted an interview of STEED who told agents a male subject with long hair gave him what he (STEED) believed to be heroin at the time. STEED stated he now believes it was fentanyl or laced with fentanyl. STEED stated he remembered being in a trailer sitting on a wood plank on a chair. It should be noted, GOICOCHEA Jr. was the only male at the scene when authorities arrived who had long hair. There also is a trailer on the property and a chair with a wood plank on it in the trailer as well.

## CONCLUSION

14. Based on the foregoing, my training and experience, and information obtained through the investigation to date, I respectfully submit there is probable cause to believe that Martin GOICOCHEA JR. violated Title 21, United States Code, Section 841(a)(1) and 846.